UNITED STATES of America, Appellant,

v.

Tony A. NAPOLI, Appellee.

No. 91–2003.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 12, 1991.

Decided Jan. 15, 1992.

Diana Jo Ryan, Rapid City, S.D., argued, for appellant.

David A. Bradsky, Rapid City, S.D., argued, for appellee.

Before LAY,* Chief Judge, ARNOLD,** Circuit Judge, and STUART,*** Senior District Judge.

ARNOLD, Circuit Judge.

Tony A. Napoli pleaded guilty to possessing an unregistered sawed-off shotgun in violation of 26 U.S.C. §§ 5861(d) and 5871. Instead of the sentence of 21 to 27 months' imprisonment recommended in the Presentence Report (PSR), the District Court[1] sentenced Napoli to one year of probation. The government appeals this sentence, arguing that the District Court improperly departed from the Sentencing Guidelines. We affirm.

In December of 1989, two weapons were stolen from dealers in Rapid City, South Dakota. Rapid City police investigating the thefts were led to Shane Dressler after he pawned one of the stolen weapons.

---

* The Hon. Donald P. Lay was Chief Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted and took senior status on January 7, 1992, before the opinion was filed.

** The Hon. Richard S. Arnold became Chief Judge of the United States Court of Appeals for the Eighth Circuit on January 7, 1992.

*** The Hon. William C. Stuart, Senior United States District Judge for the Southern District of Iowa, sitting by designation.

1. The Hon. Richard H. Battey, United States District Judge for the District of South Dakota.

Dressler confessed to his role in the thefts and told police that his accomplice was Napoli. The police convinced Dressler to go to the White Tail Motel, where Napoli was living, and attempt to buy from Napoli the other weapon they had stolen. Dressler went to the motel, taped his conversation with Napoli, and bought the stolen weapon for $125 in marked bills from him.

On January 3, 1990, the police got a warrant to search Napoli's motel room. In the motel room, the police found $100 of the marked money Dressler paid to Napoli for the stolen weapon. They also found part of a baseball and football card collection stolen from a shop in Rapid City in December of 1989. Under the mattress of Napoli's bed, the police found a sawed-off shotgun. When they found the shotgun, it was not operable and did not have a firing pin.

The police arrested Napoli the same day they searched his motel room. He confessed to stealing both the weapons and the card collection. Although possession of an unregistered firearm is a violation of state law, only the federal authorities chose to prosecute Napoli for possession of the shotgun found under his mattress. On January 3, 1991, Napoli pleaded guilty to possessing an unregistered firearm in violation of 26 U.S.C. § 5861(d).[2]

Prior to sentencing, the probation officer prepared a PSR. Relying on § 2K2.1(a)(1) of the Guidelines in effect at the time Napoli committed the offense, the probation officer concluded that Napoli had a base offense level of 16. With a two-point reduction for acceptance of responsibility under § 3E1.1, the PSR indicated a total offense level of 14. By combining this base offense level with Napoli's criminal-history category of III, the probation officer recommended a sentencing range of 21 to 27 months' imprisonment. The government agreed with these recommendations, but Napoli did not. Napoli claimed that § 2K2.1(b)(1) (firearm possessed only for

sporting or collection) applied to him and reduced his base offense level to 6. With a further two-point reduction for acceptance of responsibility, Napoli argued that his base offense level should be 4, with a sentencing range of 0 to 6 months' imprisonment or the possibility of probation.

The District Court conducted a sentencing hearing on April 1, 1991. Napoli testified that he got the shotgun from his uncle when he was fifteen years old. The day after he got the shotgun, it fell out of the bed of a pick-up truck. The stock broke off, the firing pin fell out, and the barrel was bent. After the barrel was bent, Napoli cut it down with a hacksaw. The shotgun eventually ended up in Napoli's toy chest, which his parents brought to him when he moved to the White Tail Motel. He said he put the shotgun under the mattress to keep from scaring the cleaning people at the motel. Although Napoli has never fired the shotgun and believed it would be dangerous to do so, he kept it because he believed it was a collector's item that he would one day display in the firearms museum his parents maintained.

Agent Paulsen of the Bureau of Alcohol, Tobacco & Firearms also testified at the hearing. He stated that he actually fired the shotgun, and that it was not dangerous to operate in any way. He explained that the firing pin could easily be replaced with a paper clip to make the gun operable. However, it was only after laboratory technicians at the Bureau of Alcohol, Tobacco & Firearms in Washington, D.C., replaced the firing pin that Agent Paulsen was able to fire the shotgun. He indicated that the shotgun was in good shape, could be fired without a stock, and that the particular gun was not a collector's item.

The District Court believed Napoli's testimony. It found that Napoli had no intent to possess the gun for an illegal purpose and that no crime was committed with the weapon. Although the Court found that

---

**2.** Section 5861(d) makes it unlawful to "possess a firearm which is not registered ... in the National Firearms Registration and Transfer Record[.]" The shotgun was a "firearm" for purposes of § 5861(d) because it was "a weapon made from a shotgun" which, "as modified[,] ha[d] an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length[.]" 26 U.S.C. § 5845(a)(2).

Napoli acquired the gun for a sporting purpose, it also stated that once the shotgun was sawed off, it no longer had a sporting purpose and could not be a collector's item. The Court noted, however, that it believed Napoli's claim that he thought the shotgun was a collector's item. Based on these facts, the District Court indicated that it intended to depart downward from a base offense level of 16 to 6. With a two-point reduction for acceptance of responsibility, the Court assigned Napoli a total offense level of 4. Since the sentencing range for an offense level of 4 was 0 to 6 months' imprisonment, Napoli was eligible for probation under the Guidelines. See U.S.S.G. § 5B1.1. Accordingly, the District Court sentenced him to one year's probation, to be served concurrently with the five years' probation Napoli was already serving for stealing the weapons and the card collection. The government appealed the sentence as an improper departure from the Guidelines.

 Although the parties view the District Court's sentence as a downward departure from the Guidelines, we see the issue in different terms. The dispute in this case is about a reduction in Napoli's base offense level from 16 to 6 under U.S.S.G. § 2K2.1(b)(1). Indeed, the government recognizes this point in its brief when it argues against the departure by noting that § 2K2.1(b)(1) takes into account the District Court's reason for departing from the Guidelines—i.e., the defendant's intended use of the weapon. It is true that the District Court itself referred to the sentence it imposed as a downward departure, but in imposing the sentence it relied on § 2K2.1(b)(1), a provision of the Guidelines. Consistently with § 2K2.1(b)(1), the Court assigned Napoli a base offense level of 6. Moreover, the Court indicated that § 5K2.11—authorizing downward departure where the defendant's conduct does not "cause or threaten the harm or evil sought to be prevented by the law proscribing the offense at issue"—did not justify its so-called departure from the Guidelines.

Having concluded that this case involves a dispute over the District Court's application of the Guidelines—instead of a downward departure—we turn to the merits of that decision. On January 3, 1990, § 2K2.1(b)(1) authorized a reduction in the base offense level from 16 to 6 for violations of 26 U.S.C. § 5861 "[i]f the defendant obtained or possessed the firearm ... solely for lawful sporting purposes or collection[.]" Application Note 2 to that section provided that "[u]nder § 2K2.1(b)(1), intended lawful use, as determined by the surrounding circumstances, provides a decrease in the offense level. Relevant circumstances include, among others, the number and type of firearms (sawed-off shotguns, for example, have few legitimate uses) and ammunition, the location and circumstances of possession, the nature of the defendant's criminal history (*e.g.*, whether involving firearms), and the extent to which possession was restricted by local law."

The District Court's examination of the relevant circumstances led it to conclude that Napoli did not possess the shotgun for an unlawful purpose and that he mistakenly believed the shotgun was a collector's item. Other facts the Court found relevant included the fact that Napoli himself modified the shotgun rather than purchasing it in that condition, and that he never fired the shotgun. These findings of fact are not clearly erroneous. While Napoli's belief that the shotgun was collectible was mistaken, that does not make § 2K2.1(b)(1) inapplicable to this case. The Guidelines discuss the defendant's intent in possessing the weapon; they do not require that intent to be reasonable. We therefore affirm the District Court's calculation of a base offense level of 6.[3]

The sentence imposed by the District Court is affirmed.

---

**3.** The government has not appealed the District Court's two-point reduction in the base offense level for acceptance of responsibility.