UNITED STATES of America,
Plaintiff–Appellee,

v.

Bennie Doyce SKINNER,
Defendant–Appellant.

No. 91–7775.

United States Court of Appeals,
Eleventh Circuit.

Aug. 14, 1992.

William Sellers, Montgomery, Ala., for defendant-appellant.

Charles R. Niven, Asst. U.S. Atty., Montgomery, Ala., for plaintiff-appellee.

Before BIRCH, Circuit Judge, JOHNSON * and BOWNES **, Senior Circuit Judges.

BIRCH, Circuit Judge:

In July 1991, appellant Bennie Doyce Skinner pleaded guilty to transporting his shotgun in interstate commerce, an act which violated 18 U.S.C. § 922(g)(1) (1988) because Skinner had a prior felony drug conviction. In this expedited appeal of his sentence, Skinner argues that the sentencing court erroneously failed to apply U.S.S.G. § 2K2.1(b)(1) (1989), a sentencing guideline that reduces a defendant's base offense level if the defendant "obtained or possessed the firearm ... solely for lawful sporting purposes or collection ...." *Id.* Because our review of this case indicates that the sentencing court may have been operating under an incorrect interpretation of section 2K2.1(b)(1), we VACATE Skinner's sentence and REMAND for resentencing.

## I.

In December 1989, Skinner's former wife was arrested in Opp, Alabama, for driving Skinner's Ford pickup truck while under the influence of alcohol. At the time of her arrest, Skinner's wife was driving alone. She testified that although she did not notice a shotgun in the truck on the night of her arrest, a gun could have been behind the seat at that time. Skinner's truck was towed to a local gasoline station in Opp.

The following day, Skinner had a friend take him to retrieve the truck. This friend testified that Skinner did not bring a gun with him on this trip to the Opp gasoline station. After retrieving his truck, Skinner drove to the Opp police station to inquire about his wife's arrest. Skinner spoke with an Opp police officer and then left the police station.

The officer followed Skinner. Shortly after leaving the station, the officer stopped Skinner because he noticed that the truck had an expired tag and a burned-out rear light. Skinner was arrested and then given a test for intoxication, which indicated that Skinner was intoxicated. It was dark—about 6:42 in the evening.

After the arrest, an Opp police officer noticed a shotgun in the cab of Skinner's truck. The record indicates that the gun is of the type anyone would normally use to hunt deer. In addition, at the time Skinner was arrested it was deer hunting season. Further, there were no indicia of criminal purposes; the barrel was not sawed-off, nor was the serial number obliterated. However, the shotgun was not found under the seat of Skinner's truck. Instead, the trial court noted that "[t]he gun was located in the front seat of the truck, lying across the seat. The barrel position was toward the floorboard with two buckshot shells, and was chambered." R2-67.

Over a year later, in February 1991, Skinner was indicted for the violation of 18 U.S.C. § 922(g)(1). Believing that he would receive a lighter sentence because he possessed the shotgun for sporting purposes, Skinner pleaded guilty to the offense. However, the trial court declined to apply U.S.S.G. § 2K2.1(b)(1) because it concluded that "the firearm here was not possessed solely for lawful purposes or collection." R2-67. Skinner appeals the trial court's ruling regarding section 2K2.1(b)(1).

## II.

At his sentencing hearing, Skinner was required to prove by a preponder-

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Hugh H. Bownes, Senior U.S. Circuit Judge for the First Circuit, sitting by designation.

ance of the evidence that he possessed the shotgun solely for lawful sporting or collection purposes. *United States v. Wyckoff,* 918 F.2d 925, 928 (11th Cir.1990) (per curiam). We must accept the trial court's factual findings regarding Skinner's possession of the shotgun unless those findings are clearly erroneous. *Id.* However, if the trial court was operating under an erroneous interpretation of the sentencing guidelines, we must vacate Skinner's sentence so that the trial court can correctly apply section 2K2.1(b)(1) on resentencing. *United States v. Buss,* 928 F.2d 150, 152 (5th Cir.1991); *United States v. Prator,* 939 F.2d 844, 846–47 (9th Cir.1991); *see also United States v. Barbontin,* 907 F.2d 1494, 1497 (5th Cir.1990) ("District courts are accorded no deference for legally incorrect applications of the sentencing guidelines....").

In determining the applicability of section 2K2.1(b)(1), the sentencing court should review all of the surrounding circumstances. *Wyckoff,* 918 F.2d at 928. Many factors are relevant to the inquiry:

(1) the number of firearms possessed by the defendant,

(2) the type of firearms possessed by the defendant,

(3) the amount of ammunition possessed,

(4) the type of ammunition possessed,

(5) the location of possession,

(6) the defendant's prior criminal history, for example, whether or not the defendant has been previously convicted of a firearms offense,

(7) the extent to which the defendant's possession was restricted by local law, and

(8) the circumstances of the defendant's possession, including actual or intended use of the firearm.

*See* U.S.S.G. § 2K2.1 (1989), application note 1 & background (commentary following guideline); *see also Wyckoff,* 918 F.2d at 928 (discussing some of these relevant factors); U.S.S.G. § 2K2.1 (1991), application note 10 (commentary following guideline) (clarifying the list of relevant factors).

As an initial matter, we note that the first seven of these factors favor Skinner.

He only possessed one shotgun, which was indisputably a gun commonly used for deer hunting. The small amount of ammunition he possessed was buckshot, also indicative of deer hunting. The shotgun was found in Skinner's pickup truck after he was stopped while driving alone in rural Alabama. Skinner's prior criminal history does not reveal any other firearms convictions, nor would it necessarily indicate that Skinner is a violent person. Finally, the record contains no indication that local law prohibited Skinner's possession; after all, there was testimony that deer-hunting shotguns in pickup trucks in rural Alabama during hunting season are quite common.

## III.

However, the eighth factor listed above does not cut clearly one way or the other, as one could fairly argue about Skinner's actual or intended use of the shotgun. Because this is a very close case, we believe it is necessary to expound upon this last factor before reviewing the trial court's findings. Such a clarification of this last factor is particularly apt because the applicable sentencing guideline notes that apart from a defendant's criminal background, "actual or intended use of the firearm is probably the most important factor in determining the sentence." U.S.S.G. § 2K2.1 (1989), background (commentary following guideline).

It appears that under this factor, the evidence might show one of four different "actual or intended" uses by a defendant. First, the defendant could have been actually using the firearm for a lawful sporting activity, as when the defendant is apprehended while he is using the firearm to hunt. *See, e.g., United States v. Bullard,* No. 91–30013, 940 F.2d 1536 (Table), 1991 WL 147021, at *3, 1991 U.S. App.LEXIS 18080, at *3 (9th Cir. Aug. 2, 1991) (unpublished opinion) (defendant had gun to protect himself from grizzly bears and at time of arrest had camping materials indicating a danger of bears); *cf. United States v. Stewart,* 780 F.Supp. 1366, 1367, 1370–71

(N.D.Fla.1991) (defendants arrested while hunting in Florida).

Second, the defendant's actual use might be for clearly nonsporting activities. The best example is the *Wyckoff* case from this circuit, where we agreed with the trial court that the defendant was not entitled to the section 2K2.1(b) reduction because the facts showed that the defendant was carrying a high powered hunting rifle when hunting was not in season. 918 F.2d at 928. Further, the record in *Wyckoff* established that the defendant had been fighting with another party immediately prior to arrest, was supplied with ample ammunition, and refused to relinquish the rifle to the officers, requiring that the loaded gun be "wrestled" from him by three policemen. *Id.* at 926. Clearly, the defendant's actual use of the weapon was not for lawful sport because "[s]elf-defense or self-protection is not sport or recreation." *Id.* at 928; *see also, e.g., United States v. Lorenzo*, No. 91–3106, 951 F.2d 350 (Table), 1991 WL 270815, at *2, 1991 U.S. App.LEXIS 30211, at *4 (6th Cir. Dec. 19, 1991) (unpublished opinion) (disallowing section 2K2.1(b) reduction when defendant actually fired the weapon in his house after a dispute with his wife because "[s]uch use is not for sport").

Third, the evidence might show that the defendant was not actually using the weapon at the time of his apprehension and intended only to use the firearm for lawful sporting or collection purposes. For example, in *United States v. Napoli*, 954 F.2d 482 (8th Cir.1992), the Eighth Circuit agreed with the sentencing court's determination that the defendant did not actually use the firearm and that the only intended use was for collection purposes. *Id.* at 483–84; *see also, e.g., United States v. Hammond*, No. 90–30333, 936 F.2d 580 (Table), 1991 WL 103450, at *1, 1991 U.S. App.LEXIS 12648, at *2 (9th Cir. June 11, 1991) (unpublished opinion) ("Hammond purchased the shotgun while he was living in a cedar log cabin without electricity in the rural woods of Idaho.... [H]e purchased the gun for hunting and had used it to kill a number of grouse for eating.

There was no evidence that the gun had been used for unlawful purposes.").

Fourth, the record might indicate that although the defendant did not actually use the firearm for unlawful purposes, he intended to do so. The majority of the cases construing actual or intended use in the context of section 2K2.1(b) involve this fourth type of scenario. *See, e.g., United States v. Cousens*, 942 F.2d 800, 802–04 (1st Cir.1991) (no actual use indicated, defendant's intended use of his Beretta 9mm pistol, Raven .25 caliber pistol, and other firearms was not for sporting or collection purposes); *United States v. Dinges*, 917 F.2d 1133, 1134–36 (8th Cir.1990) (no actual use, defendant's possession of loaded semi-automatic shotgun, loaded AKS–762 semi-automatic 39mm rifle, loaded Smith & Wesson .41 caliber magnum pistol, numerous rounds of ammunition, 55 and ½ sticks of dynamite, and other weapons and explosives was not for sporting or collection purposes); *United States v. Kirk*, 894 F.2d 1162, 1163–64 (10th Cir.1990) (defendant did not intend to possess his concealed sawed-off shotgun for collection purposes); *United States v. Parsons*, No. 89–3807, 899 F.2d 15 (Table), 1990 WL 33126, at *3, 1990 U.S. App.LEXIS 4494, at *9–11 (6th Cir. Mar. 26, 1990) (unpublished opinion) (defendant did not possess his homemade Sten machine gun, altered M–10 machine gun, .45 caliber pistol with obliterated serial number, homemade silencers, and various bomb devices for recreational purposes).

## IV.

█ Our review of the record in this case indicates that the sentencing court apparently had a choice between two of the above-described scenarios. Scenario one and scenario four probably do not describe the present case. It does not appear that Skinner was actually using the gun to hunt; at the time he was arrested, he was driving at night while intoxicated a short time after leaving a police station. Nor was there evidence suggesting that Skinner intended to use his shotgun in the future for unlawful purposes. Skinner's gun was a deer hunting gun, he had deer

hunting ammunition, and he stated that he had been deer hunting a few days prior to his arrest.

Thus, in this case, the "actual or intended use" factor distills into a choice between scenarios two and three. In terms of scenario two, Skinner may have actually been using the shotgun at the time the police officers apprehended him. Specifically, when he was stopped, Skinner's gun was loaded with buckshot, on the seat, immediately accessible to Skinner perhaps for defensive purposes at arrest. In the alternative, Skinner may not have actually been using the shotgun at the time of his arrest. It may be that although the gun was loaded and accessible, Skinner had no intention of actually using the gun when he was stopped by the police. Under such facts, Skinner would be covered by the line of cases described by scenario three: no actual use of the weapon, and an intended future use for sporting purposes only.

If the district court had made a clear choice between the above two scenarios, we doubt whether we could overturn the court's sentencing decision. After all, there is factual support for either theory. However, the court's statements at the sentencing hearing fail to reveal a clear choice. Indeed, one of the court's statements indicates a possible erroneous interpretation of section 2K2.1(b). The court noted: *"At the time the defendant had the gun,* he had no intention of using it for any lawful sporting or collection purposes." R2–67 (emphasis added). Of course, that statement is consistent with scenario two *and* scenario three—the defendant who actually used the gun for an unlawful purpose, as well as the defendant who did not use the gun and only intended to use it later for lawful sport, both have no intention of using the gun for sport "at the time" they are apprehended with the gun.

■ In other words, the record indicates that it is possible that the court may have been operating under the erroneous belief that the section 2K2.1(b) reduction only applies to scenario one—defendants who are actually and lawfully hunting with the firearm "at the time" they are caught with

the gun. The trial court's emphasis on the time of day that Skinner was apprehended, *see* R2–67, buttresses our belief that the court may have misinterpreted the applicable sentencing guideline. Moreover, the government's argument that the reduction should not be allowed was explicitly premised on the notion that Skinner could not have been legally hunting when he was stopped by the police:

> [H]e could not have possessed this firearm *when he did* for lawful sporting purposes. It's at night. We heard testimony that there are no lawful sporting purposes *at night* for this shotgun, and the type of shells that were retrieved from his truck. Also he was intoxicated. *He could not have been out hunting with this particular shotgun while he was out intoxicated, not for lawful sporting purposes anyway.*

R2–64–65 (emphasis added). The government's argument, as well as the trial court's statement, mistakenly implies that the only way Skinner could have received the benefit of the section 2K2.1(b) reduction was to prove that he was engaged in a lawful sporting activity at the time of his arrest.

That view of section 2K2.1(b) is erroneous. If Skinner was not actually using the weapon at the time of his arrest, it is irrelevant that he could not have lawfully been hunting when he was apprehended. Because Skinner may have been sentenced under a mistaken view of section 2K2.1(b), we VACATE his sentence and REMAND for resentencing. If the court sentenced Skinner under a mistaken view of the sentencing guidelines, it must resentence Skinner. If instead the court sentenced Skinner on the factual determination that he was actually using the firearm for illegitimate purposes at the time of his arrest, the sentence may be reimposed. *See Buss,* 928 F.2d at 152.

VACATED AND REMANDED.