Suzanne CAHNMANN, on behalf of herself and all others similarly situated, Plaintiff,

v.

SPRINT CORPORATION, a Kansas corporation, Defendant.

No. 96 C 5129.

United States District Court, N.D. Illinois, Eastern Division.

April 21, 1997.

Clinton A. Krislov, Krislov & Associates, Ltd., Chicago, IL, for Suzanne Cahnmann.

David Allen Shaneyfelt, Bruce J. Van Heukelem, Peter Paul VanderVelde, Hoogendoorn, Talbot, Davids, Godfrey & Milligan, Chicago, IL, Brant M. Laue, Kirk T. May, Scott M. Brinkman, Rouse, Hendricks, German, May & Shank, P.C., Kansas City, MO, for Sprint Corp.

## MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

Suzanne Cahnmann filed this case in state court describing it as "a class action by customers enrolled in defendant Sprint's 'Fridays Free' long distance calling promotion, promising customers who signed up would pay nothing for a year of long distance calls [anywhere in the world] on Friday." All the customers had to do was meet a monthly billing minimum on the calls for which they did pay. Although Sprint initially honored the agreement, on or about April 18, 1996, Sprint unilaterally began charging these customers for Friday calls to nine countries, albeit at a [25%] "discounted" rate. Essentially Sprint says that the change was required "by dramatic international calling volume increases that affected Sprint's ability to provide international calling services and threatened its ability to provide timely domestic service." On its face this is not a very appealing explanation, a variation of "I know I agreed to do this and you are paying the agreed upon price, but it is too difficult for me to deliver so I am just going to deliver 25% of what I agreed to deliver. God speed and good luck to you." This explanation can be offered with a straight face only because a regulated telecommunications company like Sprint has, at times, the duty to provide a minimum level of service to all its customers even at the expense of special services to some of its customers.

The first thing before me is not the validity of the claim or the explanation. It is the question of whether anything ought to be before me.

Sprint removed the case to this court and Cahnmann wants to have it remanded.

The removal is defended on the grounds that this is a federal claim disguised by artful pleading as a state law claim. The artful pleading doctrine denies a plaintiff the right to plead his case away from federal court if the only way he can do so is to omit facts that indicate federal jurisdiction or omit federal questions that are essential to recovery. *See Burda v. M. Ecker*, 954 F.2d 434, 438 (7th Cir.1992). The doctrine is not often applied. It obviously has no application where federal law has no preemptive effect, but its application is not dependent on the existence of complete preemption. What is required is that the state court pleading actually invokes federal law and not state law. Stated another way, complete preemption on the ERISA model is not a sine qua non of the artful pleading doctrine, what is essential is that the true claim be a federal claim and not a state claim by virtue of federal legislation. *See Marcus v. A.T. & T. Corp.*, 938 F.Supp. 1158, 1165–69 (S.D.N.Y.1996).

Is this claim artfully pleaded? I think so. By speaking generally of contract and misrepresentations to state its claims of contract breach and of fraud and deception, the complaint artfully avoids the obvious. Sprint must charge its customers in conformity with the tariffs it filed with the Federal Communication Commission. 47 U.S.C. § 203(a) (1994). Properly drafted the complaint would have said that Sprint agreed to bill its customers in conformity with its filed tariff and then amended the tariff despite its promise not to amend the tariff for one year. It would also have said that it represented it would not amend the tariff for one year and did so knowing the representation was false. The complaint is written to avoid any mention of the rate setting and rate charging mechanism for long distance phone calls because, of course, Congress has given the FCC sole authority in this area (absent surrender of that authority which has not occurred). This is a complaint about the right of Sprint to bill in a certain way, and it is a federal claim. I concur with the analysis of other judges who have reached the same conclusion. *See Marcus v. A.T. & T. Corp., supra.; In re Comcast Cellular,* 949 F.Supp.

**1232**

1193 (E.D.Pa.1996); and *Mellman v. Sprint,* 96 cv 119–MMP (S.D.Fla.1996).

█ Sprint raises one other ground for federal jurisdiction. There is diversity. The individual claims are relatively small not reaching the jurisdictional amount. They cannot be aggregated. Sprint relies on the proposition that there is a request for injunctive relief which, if granted, would cost more than $50,000.

█ Under *McCarty v. Amoco Pipeline Co.,* 595 F.2d 389 (7th Cir.1979), the jurisdictional amount is met if the cost of the relief to defendant exceeds this amount even if the benefit to any single plaintiff does not. If the jurisdictional amount is satisfied in this way, then I have jurisdiction over that claim and all the others would come with it under supplemental jurisdiction. I think this is a good theory, and I applied it more than fours years ago. *Allen v. Citicorp Mortgage Co.,* 90 cv 5357 (N.D.Ill.1990). Both the Fifth and Seventh Circuits took this view. *Stromberg Metal Works, Inc. v. Press Mechanical, Inc.,* 77 F.3d 928, 930–31 (7th Cir.1996); *In re Abbott Laboratories,* 51 F.3d 524, 529 (5th Cir.1995). The theory does not apply here, the cost of the injunctive relief to Sprint is simply the aggregate of all the claims of the individual class member. In *Allen v. Citicorp,* plaintiffs sought an injunction which would have required the defendant to reprogram its computers which calculated escrow payments for many thousands of customers. If just a single plaintiff or a small class of plaintiffs had prevailed, the cost of reprogramming would still have exceeded the jurisdictional amount. The same reasoning was applicable in *Loizon v. SMH Societe Suisse,* 950 F.Supp. 250 (N.D.Ill.1996) where the plaintiffs sought an order requiring defendant to notify a large number of persons of certain product hazards. The cost of compliance with such an order exceeded the jurisdictional amount even if only one class member prevailed in the case. The principle which Sprint seeks to use requires that its cost be computed without aggregation of individual claims. Thus Sprint cannot invoke this principle, and its diversity jurisdiction argument fails.

Sprint asks for judgment on the pleadings.

Sprint is a national company and this lawsuit has been filed in some other places as well as here. Sprint has developed a defense and has seen it prevail elsewhere. Cahnmann's lawyers have seen what has gone before and have offered grounds on which they will stand.

█ The Sprint theory is simple and I state it without citations. The core of the Federal Communications Act is a requirement that telecommunications providers tell the FCC what they will charge for each of their services. They file a tariff with their rates. The FCC has the power to decide whether the filed rates are reasonable. The providers have to stick to those rates, charging neither more nor less. Even if they explicitly agree with a customer to alter the rate, the agreement has no legal effect. The tariff, the filed rates, are publicly available and the law presumes a provider cannot effectively misrepresent its rates. Whatever the salesman says and whatever is advertised, the consumer can learn the truth from the FCC. And it matters not if the claim arises from an amendment to a tariff which changes the rates. The customer is presumed to be aware that amendments to tariffs are always possible. If the customer does not like the amendment, the customer has standing to complain to the FCC which can invalidate the amendment. There is, therefore, no contract to enforce, and Cahnmann's reliance upon the representations of Sprint is not a permissible basis for a damage claim. And were it permissible, there is no way that damages can be awarded. If a court were to order Sprint to compensate Cahnmann for the costs of her overseas calls on Fridays, it would be modifying the tariff and only the FCC has that power. This defense is sound and I see no reason to restate the statutory and decisional bases for it, since that has already been done well by Judges Ross and Gibbons respectively in *Birnbaum v. Sprint Communications,* 96 CV 2514(ARR), 1996 WL 897326 (E.D.N.Y.1996) and *Kutner v. Sprint,* 96–2534 GV (W.D.Tenn.1997). The defense was also sustained in a slightly different context by

Judge Mukasey in *Marcus v. A.T. & T. Corp., supra.*

 Cahnmann does not concede any of this but argues that even if these are the rules of this game, she can still win because all she asks is that I enforce the original tariff. This way, she reasons, I do not tromp upon the powers of the FCC and it is still a "tariff" that is the source of her telephone bills. The obvious difficulty is that I would not be enforcing "the" tariff, I would be enforcing a different tariff. I do not believe that the Federal Communications Act would permit a court to choose among several tariffs filed by a single company over the years and enforce whichever one it selects.

 There are cases which enforce a tariff against claims of retroactive amendment, but there is no claim here that Cahnmann has been charged for Friday calls which occurred prior to the amendment. Cahnmann does argue, as a last resort, that there is a retroactive amendment here because the tariff said "customers can receive free usage (outbound international only) on one day a week (such day to be determined by Sprint) for 12 months." *See Alabama State Docks Dept. v. Bunge Corp.*, 655 F.2d 64, 67 (5th Cir. Unit B 1981) (ordinary rules of contract interpretation apply to interpret tariff language). This argument is sketched rather than made.[1] There is no precedent, cited to me, for the proposition that "customer can" is, in a tariff, the equivalent of saying "the company must provide such service" or "the company promises to provide the service for up to 12 months if that is what the customer elects." I am under no obligation to consider such an undeveloped argument and I refuse to do so. *United States v. Giovannetti*, 919 F.2d 1223, 1229 (7th Cir.1990) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why

it is a good point despite a lack of supporting authority or in the face of contrary authority, forfeits the point.").

 Cahnmann cannot prevail and secure the principal relief she seeks. Her contract claim dies because it is the tariff and not the contract that controls the terms of business between Cahnmann and Sprint. The fraud claims fail because damages are not possible without a judicial amendment of the tariff which is forbidden. This reasoning would apply even if Cahnmann had made the more extreme allegation that Sprint had offered Free Fridays, deliberately intending to amend the tariff after it had lured enough customers to its service.[2] There is no fraud exception to the rule which denies judicial remedies to those who are charged the filed rates. *See Taffet v. Southern Co.*, 967 F.2d 1483, 1488–90 (11th Cir.1992) (en banc).

 The damage claims under state law are untenable since both applicable state laws, found in the Illinois Consumer Fraud and Deceptive Business Practices Act, contain specific exemptions for "actions or transactions specifically authorized by ... any regulatory body ... acting under statutory authority of ... the United States," (815 ILCS 505/10b), and "conduct in compliance with ... rules of ... a Federal ... agency," (815 ILCS 510/4). *In Kellerman v. MCI Telecommunications Corp.*, 112 Ill.2d 428, 98 Ill.Dec. 24, 493 N.E.2d 1045 (1986), the leading state case, the state court never confronted the question of whether damages (as opposed to other remedies) were available.

 Finally, there is a routine request in the complaint for a permanent injunction against continuing to advertise Free Fridays, but this relief cannot be granted on these pleadings. There is one allegation that such continuing advertising is occurring, but it is

---

1. In its entirety the argument starts by quoting the tariff and then says: "It confers a right to the consumer. Any argument to the contrary by Sprint is futile. In fact, when Sprint wished to retain discretion under the tariff it specifically said so. (.... stating customers are entitled to one day a week of free calls 'such day to be determined by Sprint')." There was a footnote which added "As a verb [can means] to be enabled by law, agreement or custom; to have a right to." Black's Law Dictionary, 206 (6th

ed.1990); "to have the right or qualifications to ... can denotes power or ability to do something": Webster's Encyclopedic Unabridged Dictionary of the English Language, 215 (1989 ed.).

2. Bait and switch is an unlikely tactic in an industry where the customer can challenge the reasonableness of the new rates at the FCC and, more importantly, can simply change carriers.

clear that the Free Friday program still exists for all but nine nations. Whether the current advertising is deceptive cannot be discerned from the pleadings (and this is unsurprising since the worth of this claim to Cahnmann is nil because she now knows the truth). There might be some declaratory or injunctive remedy left to pursue under state law, but I do not see it appropriately pled in this case and I suspect there is little financial incentive to do so.[3] In defending against the motion for judgment on the pleadings, the plaintiff never raises the non-monetary remedies as a reason to keep the case alive. Indeed, in arguing for its motion to remand, plaintiff eschews the significance of injunctive relief. Claims for something other than damages are, I find, not effectively prosecuted here.

The motion of Sprint for judgment on the pleadings is granted. The motion of Cahnmann to remand is denied.

---

**3.** This case was filed as a putative class action but no motion for class certification was ever filed. If one were, I doubt that plaintiff would be an appropriate class representative since the false advertising claim which would form the basis for injunctive relief would not fit her case well. If Sprint has continued to advertise Free Fridays in a deceptive way at some time after the change in tariff, an appropriate plaintiff might exist, but it is not Suzanne Cahnmann.