962 P.2d 104 (1998)
136 Wash.2d 322
Coryelle TENORE, Charles F. Peterson and Karen M. Cole, on behalf of Themselves and All Others Similarly Situated, Appellants,
v.
AT & T WIRELESS SERVICES and McCaw Cellular Communications, Inc. d/b/a Cellular One, Respondents.
No. 65609-6.
Supreme Court of Washington, En Banc.
Argued May 19, 1998.
Decided September 10, 1998.
*105 Hagens & Berman, Steve Berman, Erin K. Flory, Seattle, for Appellants.
Stokes, Eitelbach & Lawrence, Michael Kipling, Laura J. Buckland, Kelly Noonan, Seattle, for Respondents.
SMITH, Justice.
Appellants Coryelle Tenore, Charles F. Peterson and Karen M. Cole, on behalf of themselves and all others similarly situated, seek direct review of a judgment of the King County Superior Court which dismissed their class action lawsuit on a Civil Rule (CR) 12(b)(6) motion based upon federal preemption of state law claims under 47 U.S.C. § 332(c)(3)(A) and the doctrine of primary jurisdiction. We granted review. We reverse the trial court.

QUESTION PRESENTED
The question presented is whether the trial court was correct in dismissing Appellants' state law claims on a CR 12(b)(6) motion based upon federal preemption under 47 U.S.C. § 332(c)(3)(A) and the doctrine of primary jurisdiction.

STATEMENT OF FACTS
On October 24, 1995, Appellants Coryelle Tenore, Charles F. Peterson and Karen M. Cole, individually and on behalf of others similarly situated, filed in the King County Superior Court a class action complaint against Respondents AT & T Wireless Services and McCaw Cellular Communications, Inc. d/b/a Cellular One.[1] Respondent AT & T Wireless Services (AT & T) is a wholly *106 owned subsidiary of AT & T Corporation and provides cellular service in the Northwest region.[2] McCaw Cellular Communications, Inc. d/b/a Cellular One (McCaw Cellular), also named as a defendant, was the largest provider of cellular telephone service in the country until it merged with AT & T.[3] McCaw Cellular no longer exists as a separate entity.[4]
In their Second Amended Class Action Complaint, Appellants claimed that Respondent AT & T engaged in "deceptive, fraudulent, misleading and/or unfair conduct" by not disclosing its practice of "rounding" airtime in order to "induce cellular customers to use its cellular service, and/or in order to unfairly profit."[5] "Rounding," "rounding up" or "full minute billing" is a common billing practice in the cellular and long distance telephone industry where fractions of a minute are rounded up to the next highest minute.[6] For example, a call that lasts one minute and one second is charged as a two-minute call, but the subscriber is not informed of the actual duration of the call.[7] Appellants claim this billing practice "results in millions of dollars of excess billing ... all at the expense of the unwary customer."[8] Appellants additionally claim this practice is "contrary to the `Service Agreement' ... which states that the customer is billed only for `the time you press send until the time you press end.'"[9]
Also, Appellants claim cellular customers do not receive the full minutes they have contracted for at a fixed rate under their service plan because of rounding.[10] For example, all subscribers are required to choose between plans that offer varying specified minutes of airtime, such as 30, 60, or 100 minutes, for a fixed monthly rate, beyond which calls are billed at a specified per-minute rate.[11] But a 30-minute plan may not in fact provide 30 full minutes because of rounding. This is what Appellants claim AT & T should have disclosed.[12]
Appellants filed state law claims in the King County Superior Court for breach of contract,[13] negligent misrepresentation, fraud, and violation of the Washington Consumer Protection Act (CPA) under RCW Chapter 19.86.[14] They requested, among other things, injunctive relief and compensatory damages in the form of a refund of the difference between the amount charged by AT & T and the amount class members would have incurred if AT & T had not engaged in the practice of rounding up without disclosing it.[15] On April 29, 1997, AT & T moved for dismissal of the complaint by a CR 12(b)(6) motion based upon federal preemption of state law claims under 47 U.S.C. § 332(c)(3)(A) and the doctrine of primary *107 jurisdiction.[16] 47 U.S.C. § 332(c)(3)(A) provides in relevant part:
Notwithstanding sections 152(b) and 221(b) of this title, no State or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service or any private mobile service, except that this paragraph shall not prohibit a State from regulating the other terms and condition of commercial mobile services.
AT & T contends this statute preempts Appellants' state law claims because the monetary relief sought by Appellants would necessarily require a court to engage in rate regulation in determining the refund award for partial minutes of cellular service.[17] AT & T further claims, under the doctrine of primary jurisdiction, that any challenge to the reasonableness of cellular rates must be deferred to the agency with expertise in rate regulationin this case, the Federal Communications Commissions (FCC).[18]
While AT & T's motion to dismiss was pending, the Court of Appeals, Division I, filed its decision in Hardy v. Claircom Comm's. Group, Inc.,[19] a case with a similar fact pattern to this one. The King County Superior Court, the Honorable J. Kathleen Learned, agreed with AT & T that Hardy is controlling and granted its motion to dismiss on June 13, 1997, stating:
The Court concludes as a matter of law that this case is controlled by Hardy v. Claircom and therefore the plaintiffs' state law claims are preempted by 47 U.S.C. § 332(c)(3)(A), and/or that the doctrine of primary jurisdiction requires that plaintiffs' claims be referred to the FCC.[[20]]
Appellants, however, contend they are only challenging the allegedly misleading advertising practices of AT & T and not the underlying rates or charges.[21] They argue it is within the authority of state courts to resolve their state law claims without FCC intervention.[22] After the order of dismissal, Appellants sought direct review by this Court, which we granted on January 6, 1998.

DISCUSSION

STANDARD OF REVIEW
Under CR 12(b)(6), a complaint can be dismissed for "failure to state a claim upon which relief can be granted." A dismissal under this rule involves a question of law which is reviewed de novo by an appellate court and is appropriate only if it appears beyond doubt that the plaintiff cannot prove any set of facts which would justify recovery.[23] In such a case, a plaintiff's allegations are presumed to be true and a court may consider hypothetical facts not included in the record.[24] CR 12(b)(6) motions should be granted "sparingly and with care" and "only in the unusual case in which plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief."[25]

HARDY V. CLAIRCOM COMMUNICATIONS GROUP, INC.

In dismissing Appellants' complaint, the trial court concluded as a matter of law that it was bound by the decision of the Court of Appeals, Division I, in Hardy v. Claircom Comm's. Group, Inc.,[26] the only Washington *108 case addressing the specific issues now before this Court.[27] Appellants argue that Hardy should not control the decision in this case and that the two cases are distinguishable.[28] AT & T claims Hardy is on point and urges this Court to follow it.[29]
The facts in Hardy are somewhat similar to the facts in this case. In Hardy Appellants Michael J. Hardy and Michael Lair brought class action lawsuits in the King County Superior Court against Claircom Communications Group, Inc., d/b/a AT & T Wireless Services (Claircom) and GTE Airphone, Inc. (GTE) claiming breach of contract, negligent misrepresentation, fraud and violation of the Washington Consumer Protection Act.[30] Claircom and GTE provide air-to-ground radiotelephone services for passengers on commercial aircraft.[31] Appellants claimed the companies were liable because the promotional materials provided to passengers aboard aircraft did not disclose the companies' practice of rounding up airtime.[32] The trial courts dismissed both appellants' actions ruling their claims were preempted by 47 U.S.C. § 332(c)(3)(A) and barred by the filed tariff doctrine.[33] The Court of Appeals affirmed on the same grounds.[34]

FILED RATE OR FILED TARIFF DOCTRINE[35]
The "filed rate" doctrine, also known as the "filed tariff"[36] doctrine, is a court-created rule to bar suits against regulated utilities involving allegations concerning the reasonableness of the filed rates.[37] This doctrine provides, in essence, that any "filed rate"a rate filed with and approved by the governing regulatory agencyis per se reasonable and cannot be the subject of legal action against the private entity that filed it.[38] The purposes of the "filed rate" doctrine are twofold: (1) to preserve the agency's primary jurisdiction to determine the reasonableness of rates, and (2) to insure that regulated entities charge only those rates approved by the agency.[39] These principles serve to provide safeguards against price discrimination and are essential in stabilizing prices.[40] But this doctrine, which operates under the assumption that the public is conclusively presumed to have knowledge of the filed rates, has often been invoked rigidly, even to bar claims arising from fraud or misrepresentation.[41]
Courts have construed the "filed rate" doctrine broadly in dismissing lawsuits against telecommunications carriers involving direct *109 or indirect challenges to the reasonableness of rates. In Marcus v. AT & T Corp., subscribers to AT & T Corporation's long distance telephone service brought class action lawsuits in the United States District Court claiming fraud, deceptive acts and practices, false advertising, negligent misrepresentation, and other state law actions for the company's alleged practice of rounding up call charges without adequate disclosure.[42] In addition to other forms of relief, plaintiffs sought compensatory damages from the defendant.[43] AT & T claimed the "filed rate" doctrine barred their claims, but plaintiffs asserted their claims did not implicate the doctrine because they merely challenged AT & T's alleged nondisclosure and deceptive advertising practices, and not the reasonableness of the underlying rates.[44] The court dismissed plaintiffs' state claims for damages in its entirety based upon the "filed rate" doctrine, stating that calculation of the damages plaintiffs sought would necessarily require the court to determine a reasonable rate in direct contravention of the "filed rate" doctrine.[45] The United States Court of Appeals for the Second Circuit affirmed the decision on appeal.[46] Other courts have dismissed similar actions under the "filed rate" doctrine.[47]
Respondent AT & T cites the Marcus case and related decisions in support of its federal preemption argument.[48] This contention, however, is without merit, simply because this case does not implicate the "filed rate" doctrine. Under Section 203 of the Federal Communications Act of 1934(FCA), all telecommunications common carriers are required to file tariffs with the FCC.[49] Most telecommunications carriers, including long distance telephone service providers, come within the meaning of "common carrier," which is broadly defined as "[a]ny person engaged in rendering communication service for hire to the public."[50] Thus, as required under Section 203(a) of the FCA, the defendants AT & T, NYNEX, and Sprint in Marcus, Wegoland, Cahnmann and Porr each had tariffs on file with the FCC.
In this case Respondents AT & T Wireless Services and McCaw Cellular Communications, Inc. d/b/a Cellular One, are cellular telephone service providers, broadly characterized as commercial mobile radio service providers, and are specifically exempted from tariff filing requirements by the FCC.[51] Because *110 there is no tariff filing requirement, the reasonableness of rates charged by commercial mobile radio service (CMRS) providers is not determined by the FCC.[52] Accordingly, not only are there no tariffs on file, but the two purposes behind the "filed rate" doctrinepreserving an agency's primary jurisdiction to determine the reasonableness of rates and insuring that only those rates approved are chargeddo not apply in this case.[53] The authorities relied upon by Respondent AT & T are thus not applicable.
In addition, AT & T claims the recent Court of Appeals, Division I, case, Hardy v. Claircom Comm's. Group, Inc., is controlling, although AT & T rests its argument on preemption and concedes the "filed rate" doctrine is not directly applicable.[54] In Hardy, both defendants Claircom and GTE had tariffs on file with the FCC, and accordingly, to the extent dismissal was predicated upon the "filed rate" doctrine, the court's decision was correct.[55] However, there was a period of five months during which Claircom's tariff was not filed, and the court correctly used preemption analysis to resolve the case during that brief period.[56]

FEDERAL PREEMPTION
Recognizing the rapid growth of the cellular telecommunications industry, Congress in 1993 amended the FCA, 47 U.S.C. §§ 151-229 to provide a comprehensive and uniform federal regulatory framework for all commercial mobile radio service (CMRS) providers.[57] To accomplish its objective of regulatory uniformity and deregulation of CMRS, Congress amended Section 332 of the FCA to provide:
Notwithstanding sections 152(b) and 221(b) of this title, no State or local government shall have authority to regulate the entry of or the rates charged by any commercial mobile service or any private mobile service, except that this paragraph shall not prohibit a State from regulating the other terms and conditions of commercial mobile services.
According to the FCC, implementing preemption rules will serve an important purpose: to "help promote investment in the wireless infrastructure by preventing burdensome and unnecessary state regulatory practices that impede the federal mandate for regulatory parity."[58] AT & T asserts 47 U.S.C. § 332(c)(3)(A) preempts all of Appellants' state law claims.
The doctrine of preemption originates from the Supremacy Clause in Article VI of the United States Constitution, which generally results in declaring invalid state laws that are contrary to or interfere with the laws of Congress.[59] The principal inquiry in preemption analysis is Congress' objective *111 or purpose in enacting a law.[60] The intent of Congress may be expressly stated in a statute or implicitly contained in its structure and design.[61] If Congress enacts a provision defining the preemptive reach of a statute, matters beyond that expressed scope are not preempted.[62]
Appellants argue the express language of Section 332 itself, which defines the FCA's preemptive reach, allows states to regulate "the other terms and conditions of commercial mobile service" that do not relate to market entry or rate regulation.[63] They assert these "other terms and conditions" include a carrier's "advertising, marketing and contracting, which are distinct from the federally regulated issues of rates and entry."[64] A Congressional House Report on the Omnibus Budget Reconciliation Act of 1993 tends to support Appellants' contention:
It is the intent of the Committee that the states still would be able to regulate the terms and conditions of these services. By "terms and conditions," the Committee intends to include such matters as customer billing information and practices and billing disputes and other consumer protections matters....[[65]]
At least one United States District Court that addressed the "terms and conditions" clause of Section 332 concluded the clause "permits state regulation of cellular telephone service providers in all areas other than the providers' entry into the market and the rates charged to their customers."[66]
Appellants additionally claim the "savings clause" in Section 414 of the FCA indicates Congressional intent to preserve state law actions that do not challenge market entry or rates charged to subscribers.[67] 47 U.S.C. § 414 provides:
Nothing in the chapter ... shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.
Some courts have cited this provision in ruling against preemption of state law claims for charges involving billing or advertising practices.[68] As Respondent AT & T contends, these cases, although factually similar, are not directly on point because they involve the question whether cases should be removed from state courts to federal courts and remain in those courts under the complete preemption doctrine.[69]
The courts in Bennett, Sanderson and De-Castro, applying 47 U.S.C. § 332(c)(3)(A), each ruled against complete preemption of plaintiffs' state law claims and remanded the *112 cases to state courts.[70] Thus, the savings clause in Section 414, together with the "terms and conditions" clause in Section 332, defeats preemption in favor of preserving state law claims that do not attack or regulate market entry or rates.[71]
The gravamen of Respondent AT & T's argument, however, is that Appellants' request for monetary damages requires a court to retroactively establish new rates in determining damages, which, in effect, is state rate-making explicitly preempted by 47 U.S.C. § 332(c)(3)(A) of the FCA.[72] Appellants assert they only challenge AT & T's inadequate disclosure practices in connection with billing, and do not contest the reasonableness or legality of the underlying rates.[73] AT & T counters by stressing that Appellants' claim is essentially a disguised form of attack on the reasonableness of its rates.
As authority for its contention, Respondent AT & T first cites three class action rounding cases that were dismissed by various courts.[74] Those cases, however, do not significantly support AT & T's position. Rogers, an Indiana Superior Court case, is a cursory order devoid of facts or legal analysis.[75] In Simons, a case before the United States District Court for the Southern District of Texas, Respondent AT & T itself stated in its brief that the plaintiffs "challenged the reasonableness of early termination fees," which made it proper for the court to dismiss on preemption grounds.[76] And in Powers, a San Diego County Superior Court case, the plaintiffs claimed in their complaint that they were damaged by defendant's "methods of determining or calculating the quantity of chargeable airtime usage," which, as the court found, seemed more like an attack on rates than a challenge to inadequate disclosure.[77]
In this case, Appellants do not contend they were injured by AT & T's practice of rounding its airtime. Instead, they only claim they were damaged by AT & T's inadequate disclosure concerning that practice. They assert this type of claim, which alleges fraud or deceptive advertising and not the reasonableness of rates, should not be preempted. They cite several cases in support of their position.[78]
*113 Appellants also cite Kellerman v. MCI Telecomm's. Corp.[79] In that case, plaintiffs, seeking damages, brought a class action against their long distance telephone service provider for breach of Illinois' consumer fraud and deceptive trade practices acts, claiming that certain of defendant's advertisements and promotional materials were fraudulent and deceptive.[80] The Illinois Supreme Court held the state law claims were not preempted, relying on the FCA's savings clause, Section 414, concluding:
The subject matter of plaintiffs' complaints involves neither the quality of defendant's service nor the reasonableness and lawfulness of its rates. Plaintiffs only allege that defendant disseminated fraudulent and deceptive advertisements concerning the cost of its long distance telephone service.[[81]]
Appellants additionally cite DeCastro v. AWACS, Inc.[82] In that case, plaintiffs brought a class action against defendant, a cellular telephone service provider, making various state law claims relating to defendant's inadequate disclosure concerning certain billing practices.[83] The case was removed to federal court on defendant's motion, but the court remanded, ruling that the FCA does not provide an enforcement mechanism for claims involving failure to disclose billing practices, stating:
[T]hese two claims center around Comcast's alleged failure to disclose a particular billing practice; they do not challenge the billing practice as unreasonable or contrary to law, nor does their resolution require a court to assess the reasonableness of the defendant's billing practice.[[84]]
Kellerman and DeCastro both conclude that the FCA does not displace, but instead supplements, state law claims against service providers for misrepresentation, fraud and unfair billing practices.[85] The FCC itself has stated that the savings clause, Section 414:
[P]reserves the availability against interstate carriers of such preexisting state remedies as tort, breach of contract, negligence, fraud, and misrepresentationremedies generally applicable to all corporations operating in the state, not just telecommunications carriers.[[86]]
AT & T challenges those cases as not constituting direct authority for the issue now before this Court. AT & T correctly notes that many of those cases were decided before Congress amended Section 332, and do not therefore refer to that provision; and that other cases involve the "complete preemption" doctrine, a related but different analysis than preemption under the explicit language of Section 332. Those cases nevertheless offer some support for Appellants' assertion that their state claims are not preempted.
Respondent AT & T also cites cases which offer support for its position, but those cases are not directly on point. Respondent cites authorities which stand for the proposition that damage awards are tantamount to rate regulation.[87] But in each of those cases, *114 either the harsh rule of the "filed rate" doctrine was implicated or the claims were found to be completely preempted by the regulatory agency's exclusive and plenary authority.
In Hardy v. Claircom Communications Group, Inc., the Court of Appeals, Division I, properly relied upon the "filed rate" doctrine to dismiss all of plaintiffs' claims arising under it.[88] However, for the five-month period during which there was no tariff on file, the court held that Section 332 preempted it, stating, "Hardy's claims implicate not only the advertising practices of AT & T Wireless but also the reasonableness of the carrier charging the tariff rate in light of those practices."[89] The court concluded the claims are preempted because Hardy is challenging the reasonableness of the tariff "in light of those practices."[90] But there was no tariff filed for the five-month period.[91] And the court used Section 332 preemption analysis solely to address the "5-month period during which AT & T Wireless concededly had no filed tariff in place."[92]
Respondent now argues that cases have held that damages implicate rate adjustment and are tantamount to rate regulation; and even though those cases involved the "filed rate" doctrine, that reasoning should be extended to dismiss claims requesting damages because, although there is no "filed tariff," the language of 47 U.S.C. § 332(c)(3)(A) preempts rate regulation.
The position of Appellants, though, is bolstered by Nader v. Allegheny Airlines, Inc.[93] In that case the plaintiff was denied boarding or "bumped" from his reserved and confirmed seat on Allegheny Airlines because the airline had overbooked its flights.[94] Instead of accepting "denied boarding compensation," plaintiff brought a common law action in the United States District Court for the District of Columbia claiming fraudulent misrepresentation because defendant did not disclose its deliberate overbooking practices.[95] The plaintiff was not contesting the reasonableness of the overbooking practice itself, but only the nondisclosure of it. The District Court found for the plaintiff, but the United States Court of Appeals for the District of Columbia reversed, ruling that the matter must be referred to the Civil Aeronautics Board (CAB) to determine whether defendant's alleged failure to disclose its deliberate overbooking practice is deceptive.[96] The Court reversed mainly on primary jurisdiction grounds, but did address an issue relevant to this case.
The Supreme Court in Nader noted that the Court of Appeals relied on Texas & Pac. R. Co. v. Abilene Cotton Oil Co. for its conclusion.[97]Abilene is a "filed rate" doctrine case which dismissed a state law action that challenged a published carrier rate as "unjust and unreasonable" by reasoning that an action for damages attacking the reasonableness of federally regulated rates would undermine the purpose of the Interstate Commerce Act.[98] The Court in Nader distinguished Abilene on the grounds that in Nader there was no "irreconcilable conflict between the statutory scheme and the persistence of common-law remedies."[99] In Abilene, the carrier would be put in an "untenable position" because it "could not abide by the rate filed with the Commission, *115 as required by statute, and also comply with a court's determination that the rate was excessive."[100] The Court in Nader noted that in such a case, "[t]he conflict between the court's common-law authority and the agency's ratemaking power was direct and unambiguous."[101] The Court then stated that in the case before it, the Court "in contrast, is not called upon to substitute its judgment for the agency's on the reasonableness of a rate."[102] That was because there was no tariff provision requirement that airlines engage in or disclose the practice of overbooking.[103] The Court concluded any "impact on rates that may result from the imposition of tort liability ... would be merely incidental."[104] Thus, the Supreme Court reversed, holding that because the action "does not turn on a determination of the reasonableness of a challenged practice," but only on the issue of disclosure of that practice, "[t]he standards to be applied in an action for fraudulent misrepresentation are within the conventional competence of the courts."[105]
Similarly, in this case, the FCC does not require CMRS providers such as Respondent AT & T to file tariffs.[106] AT & T does not dispute that billing and advertising practices are not governed exclusively by the FCA, if at all. This is a question we need not consider. Appellants do not attack the reasonableness of AT & T's practice of rounding up call charges. They challenge only nondisclosure of the practice. Nader addresses the precise issue now before this Court. We consider it applicable authority.
There is sufficient reliable authority for this Court to conclude that the state law claims brought by Appellants and the damages they seek do not implicate rate regulation prohibited by Section 332 of the FCA. The award of damages is not per se rate regulation, and as the United States Supreme Court has observed, does not require a court to "substitute its judgment for the agency's on the reasonableness of a rate."[107] Any court is competent to determine an award of damages.[108]

PRIMARY JURISDICTION
In dismissing Appellants' complaint, the King County Superior Court concluded their state law claims were preempted by Section 332 of the FCA "and/or that the doctrine of primary jurisdiction requires that plaintiffs claims be referred to the FCC."[109]
"Primary jurisdiction" is a doctrine which requires that issues within an agency's special expertise be decided by the appropriate agency.[110] Under this doctrine claims must be referred to an agency if (1) the administrative agency has the authority to resolve the issues that would be referred to it by the court; (2) the agency has special competence over all or some part of the controversy which renders the agency better able than the court to resolve the issues; and (3) the claim before the court involves issues that fall within the scope of a pervasive regulatory scheme creating a danger that judicial action would conflict with the regulatory scheme.[111]
Respondent AT & T asserts the doctrine of primary jurisdiction requires that this matter be decided by the FCC. The basis *116 of AT & T's argument is no different than its contention concerning preemptionAppellants' request for damages in effect requires a court to engage in rate regulation in determining a reasonable charge for partial minutes of airtimeand thus it should be referred to the FCC which has special competence and expertise in rate regulation. AT & T cites several cases to support its position. We do not consider those cases persuasive.[112] Issues which call into question the legality or reasonableness of a carrier's rates should properly be referred to the FCC. In our discussion on preemption we have already concluded that Appellants' state law claims for nondisclosure did not constitute a challenge to the reasonableness of the rates, notwithstanding that they were requesting damages.
Appellants cite cases which hold that matters not pertaining to tariffs or rates do not require agency expertise, but fall within the conventional competence of courts without the need for referral to the FCC.[113] In Nader v. Allegheny Airlines, Inc., plaintiff brought common law actions against defendant Allegheny Airlines over nondisclosure of its overbooking practices. The Supreme Court held the doctrine of "primary jurisdiction" did not require the misrepresentation claim to be referred to the regulatory agency, the Civil Aeronautics Board (CAB).[114] The Court stated:
The action brought by petitioner does not turn on a determination of the reasonableness of a challenged practicea determination that could be facilitated by an informed evaluation of the economics or technology of the regulated industry. The standards to be applied in an action for fraudulent misrepresentation are within the conventional competence of the courts, and the judgment of a technically expert body is not likely to be helpful in the application of these standards to the facts of this case.[[115]]
Similarly, in this case there is no conflict between the authority of the FCC and that of a court in deciding whether AT & T's advertising practices are misleading. As in Nader, Appellants in this case do not challenge the reasonableness of AT & T's underlying practice of rounding its call charges. Also, although the FCC enacted the preemption provision in Section 332 to promote uniformity, it did so primarily to prevent burdensome and unnecessary state regulatory practices, and not to subject the CMRS infrastructure to rigid control.[116] Nor does the FCC have exclusive authority over advertising and billing practices, if at all.
AT & T also argues FCC jurisdiction is appropriate because an award of damages would violate "47 U.S.C. § 202, which specifically prohibits price discrimination among customers."[117] In making this argument, *117 however, AT & T overlooks the fact that the price discrimination must first be "unjust or unreasonable."[118] 47 U.S.C. § 202(a) states, in relevant part, "It shall be unlawful for any common carrier to make any unjust or unreasonable discrimination in charges, practices ... or services for or in connection with like communication service...." (Emphasis added.)
Section 202 has traditionally been used by companies in filing complaints with the FCC to allege discriminatory practices by carriers charging different rates for like services or used by the FCC in rejecting tariff filings that attempted to charge different prices for like services.[119] Courts have used a three-part test in determining whether a carrier is discriminating in violation of Section 202(a): (1) whether the services are "like"; (2) if so, whether there is a price difference between them; and (3) if there is such a difference, whether that difference is unreasonable.[120] The significant inquiry is whether two services are "like." In making this determination, courts use an FCC developed test known as the "functional equivalency test."[121] Under this test, the focus of the inquiry centers on whether the services in question are "different in any material functional respect."[122]
AT & T relies on two authorities for its argument, but both are "filed rate" doctrine cases and thus offer no significant support.[123] Accordingly, because Appellants do not challenge a practice requiring technical and expert evaluation by the FCC, and because Section 202 does not apply, we conclude the matter need not be referred to the FCC under the doctrine of "primary jurisdiction."

SUMMARY AND CONCLUSIONS
The King County Superior Court dismissed Appellants' complaint concluding the case was controlled by Hardy v. Claircom Comm's. Group, Inc., and preempted by 47 U.S.C. § 332(c)(3)(A) and the doctrine of "primary jurisdiction." The ruling in Hardy principally involved the "filed rate" doctrine. AT & T cites "filed rate" doctrine cases in support of its position. In this case, however, AT & T as a commercial mobile radio service provider is specifically exempted from tariff filing requirements and thus those cases are not materially significant.
The language of Section 332 itself, contained in the "terms and conditions" clause, limits the preemptive reach of that provision. The savings clause, Section 414, is indicative of the intent of Congress to preserve state law claims for billing or advertising which do not attack market entry or rates charged by commercial mobile radio service (CMRS) providers.
The United States Supreme Court in Nader v. Allegheny Airlines concluded a challenge to a practice that is not governed by a tariff filing does not implicate the "conflict" inherent in contesting a practice or rate expressly regulated by an agency and that any impact on rates is "merely incidental." A court may award damages without it constituting rate making.
The doctrine of "primary jurisdiction" requires that a court refer issues within an *118 agency's special expertise to the appropriate agency for an initial determination. Because Appellants' claims do not challenge the rates charged by AT & T nor any other technical practice requiring Federal Communications Commission (FCC) expertise, the matter falls within the conventional competence of the courts without the need for referral to the FCC.
We reverse the judgment of the King County Superior Court which dismissed Appellants' class action complaint on a CR 12(b)(6) motion based upon federal preemption of state law claims under 47 U.S.C. § 332(c)(3)(A), the doctrine of "primary jurisdiction" and the Court of Appeals decision in Hardy v. Claircom Communications, Inc.
DURHAM, C.J., and DOLLIVER, GUY, JOHNSON, MADSEN, ALEXANDER, TALMADGE and SANDERS, JJ., concur.
NOTES
[1] Br. of Appellants at 3.
[2] Clerk's Papers at 7, 155, 158. Respondents note that AT & T Wireless itself does not hold any cellular licenses, but instead provides cellular telephone service through direct and indirect ownership interests in cellular license holders.
[3] Id. at 158. As of 1996, cellular service was in existence for over 13 years, growing at the rate of 50 percent per year. John W. Berresford, Mergers in Mobile Telecommunications Services: A Primer on the Analysis of Their Competitive Effects, 48 FED. COMM. L.J. 247, 256 (1996).
[4] Respondents AT & T and McCaw Cellular, are collectively referred to in this opinion as "AT & T."
[5] Clerk's Papers at 156.
[6] Id. at 8. Long distance carriers have historically used full minute billing. In a similar class action full minute billing case, the United States Court of Appeals for the District of Columbia recently affirmed dismissal of fraud, negligent misrepresentation, and false advertising claims, holding that no reasonable customer of the long distance telephone service provider could actually have been misled by the standard and traditional practice of billing in whole minute increments. Alicke v. MCI Comm's. Corp., 111 F.3d 909, 912 (D.C.Cir.1997).
[7] Clerk's Papers at 156.
[8] Id.
[9] Id.
[10] Id.
[11] Id.
[12] Id.
[13] Appellants no longer dispute the breach of contract claim on appeal. Br. of Appellants at 1.
[14] Clerk's Papers at 164-65.
[15] Id. at 156-57, 166-67.
[16] Id. at 26.
[17] Id. at 9.
[18] Id. at 23.
[19] 86 Wash.App. 488, 937 P.2d 1128 (1997).
[20] Order of Dismissal. Clerk's Papers at 279.
[21] Br. of Appellants at 6.
[22] Id. at 29-30.
[23] Hoffer v. State, 110 Wash.2d 415, 420, 755 P.2d 781 (1988), aff'd, 113 Wash.2d 148, 776 P.2d 963 (1989); Bravo v. Dolsen Cos., 125 Wash.2d 745, 750, 888 P.2d 147 (1995).
[24] Cutler v. Phillips Petroleum Co., 124 Wash.2d 749, 755, 881 P.2d 216 (1994), cert. denied, 515 U.S. 1169, 115 S.Ct. 2634, 132 L.Ed.2d 873 (1995).
[25] Hoffer, 110 Wash.2d at 420, 755 P.2d 781 (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 604 (1969)); Orwick v. City of Seattle, 103 Wash.2d 249, 254, 692 P.2d 793 (1984).
[26] 86 Wash.App. 488, 937 P.2d 1128 (1997).
[27] Order of Dismissal. Clerk's Papers at 279.
[28] Br. of Appellants at 23.
[29] Br. of Resp'ts at 6-7.
[30] Hardy, 86 Wash.App. at 489-91, 937 P.2d 1128.
[31] Id. at 490, 937 P.2d 1128.
[32] Id.
[33] Id.
[34] Id.
[35] See Wegoland Ltd. v. NYNEX Corp., 806 F.Supp. 1112 (S.D.N.Y.1992) aff'd, 27 F.3d 17 (2d Cir.1994) for a comprehensive history of the doctrine.
[36] "Tariff" is defined as "Schedules of rates and regulations filed by common carriers." 47 C.F.R. § 61.3(ii) (1997). Courts commonly use "filed rate" to refer to a tariff.
[37] Wegoland, Ltd. v. NYNEX Corp., 27 F.3d 17, 18 (2d Cir.1994).
[38] Id.
[39] Arkansas Louisiana Gas Co. v. Hall, 453 U.S. 571, 577-78, 101 S.Ct. 2925, 2930, 69 L.Ed.2d 856 (1981).
[40] Maislin Indus., U.S., Inc. v. Primary Steel, Inc., 497 U.S. 116, 126, 110 S.Ct. 2759, 2766, 111 L.Ed.2d 94 (1990).
[41] Kansas City S.R. Co. v. Carl, 227 U.S. 639, 653, 33 S.Ct. 391, 395, 57 L.Ed. 683 (1913) ("Neither the intentional nor accidental misstatement of the applicable published rate will bind the carrier or shipper"); See also Marco Supply Co. v. AT & T Comm's., Inc., 875 F.2d 434 (4th Cir. 1989) (doctrine precludes claim of price misrepresentation); Taffet v. Southern Co., 967 F.2d 1483 (11th Cir.1992) (en banc) (allegedly overcharged or defrauded customers suffered no cognizable injury because of filed rate); Southwestern Bell Tel. Co. v. Metro-Link Telecom, Inc., 919 S.W.2d 687 (Tex.App.1996) (doctrine bars action for various allegedly anticompetitive practices committed by long distance provider).
[42] 938 F.Supp. 1158, 1164 (S.D.N.Y.1996).
[43] Id.
[44] Id. at 1170.
[45] Id. at 1172.
[46] Marcus v. AT & T Corp., 138 F.3d 46 (2d Cir.1998).
[47] See Wegoland, Ltd. v. NYNEX Corp., 27 F.3d 17 (2d Cir.1994); Cahnmann v. Sprint Corp., 961 F.Supp. 1229 (N.D.Ill.1997) aff'd, 133 F.3d 484 (1998); Porr v. NYNEX Corp., 230 A.D.2d 564, 660 N.Y.S.2d 440 (1997).
[48] Respondent called the Court's attention to a recent United States Supreme Court decision, American Tel. & Tel. Co. v. Central Office Tel., Inc., ___ U.S. ___, 118 S.Ct. 1956, 141 L.Ed.2d 222 (1998), which reversed a ruling of the United States Court of Appeals for the Ninth Circuit. The Ninth Circuit had affirmed a magistrate judge's award of damages on state law claims despite the existence of a filed tariff, stating "[b]ecause this case does not involve rates or rate-setting, but rather involves the provisioning of services and billing under several contracts, the filed rate doctrine does not apply." Central Office Tel., Inc. v. American Tel. & Tel. Co., 108 F.3d 981, 990 (9th Cir.1997). In reversing the Ninth Circuit, the Supreme Court reasoned that "[r]ates ... do not exist in isolation ... [but] have meaning only when one knows the services to which they are attached." Accordingly, the Court ruled the fact services and billing are involved instead of rates or ratesetting does not make the filed rate doctrine inapplicable. American Tel. & Tel. Co., ___ U.S. at ___, 118 S.Ct. at 1963.
[49] 47 U.S.C. § 203(a).
[50] 47 C.F.R. § 101.3 (1997).
[51] Section 332 of the FCA which governs "mobile services" construes cellular telephone service providers as common carriers, and thus companies providing cellular services are subject to many of the same regulations as long distance telephone service providers. 47 U.S.C. § 332(c)(1)(A). For example, cellular telephone service providers must furnish service to all customers upon reasonable request and may not charge rates or engage in practices that are unjust or unreasonable. 47 U.S.C. §§ 201, 202. However, cellular telephone service providers and other similar mobile entities, commonly referred to as "Commercial Mobile Radio Service" (CMRS) providers, are specifically exempted from complying with Section 203 (section requiring tariff filing). 47 C.F.R. § 20.15(a), (c) (1997); see 47 C.F.R. § 20.3 (1997) for a definition of CMRS and § 20.9(a), for a listing of the 13 mobile services currently considered by the FCC to be CMRS. Also, in an exhaustive FCC order implementing various provisions of the FCA's 1993 amendments, the FCC concluded that sufficient competition in the cellular marketplace obviates any need for conventional regulation and decided to "forbear from imposing any tariff filing obligations upon CMRS providers." Second Report and Order, In the Matter of Implementing of Sections 3(n) and 332 of the Communications Act Regulatory Treatment of Mobile Services, 9 FCC Rec. 1411, 1418 and 1478 (1994).
[52] 47 C.F.R. § 20.15(a), (c).
[53] Arkansas Louisiana Gas Co. v. Hall, 453 U.S. 571, 577-78, 101 S.Ct. 2925, 2930, 69 L.Ed.2d 856 (1981).
[54] Br. of Resp'ts at 16-17.
[55] Hardy, 86 Wash.App. at 493, 937 P.2d 1128. Air-to-ground radio mobile service providers are subject to greater regulatory control than other CMRS providers, and thus are required to file tariffs with the FCC.
[56] Id. at 495-96, 937 P.2d 1128.
[57] See Omnibus Budget Reconciliation Act of 1993, Pub.L. No. 103-66, Title VI, § 6002, 107 Stat. 312, 387-97 (1993).
[58] Second Report and Order, 9 FCC Rec. at 1421.
[59] U.S. Const, art. VI, cl. 2; Wisconsin Pub. Intervenor v. Mortier, 501 U.S. 597, 604, 111 S.Ct. 2476, 2481, 115 L.Ed.2d 532 (1991).
[60] Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992).
[61] Id.
[62] Id. at 517, 112 S.Ct. 2608.
[63] Br. of Appellants at 6. See 47 U.S.C. § 332(c)(3)(A).
[64] Br. of Appellants at 10.
[65] H.R. REP. No. 103-111, 103rd Congress, 1st Sess. 211, 261, reprinted in 1993 U.S.C.A.A.N. 378, 588.
[66] DeCastro v. AWACS, Inc., 935 F.Supp. 541, 552 (D.N.J. 1996); see also Mountain Solutions, Inc. v. State Corp. Comm'n, 966 F.Supp. 1043, 1048 (D.Kan. 1997).
[67] Br. of Appellants at 7. See 47 U.S.C. § 414.
[68] Bennett v. Alltel Mobile Communications of Alabama, Inc., No. 96-D-232-N, slip op. at 11, 1996 WL 1054301 (M.D.Ala. 1996); Weinberg v. Sprint Corp., 165 F.R.D. 431, 439 (D.N.J.1996); Sanderson v. AWACS, Inc., 958 F.Supp. 947, 956-58 (D.Del. 1997); DeCastro, 935 F.Supp. at 551.
[69] Br. of Resp'ts at 22-27. "Complete preemption" is a related but different procedural doctrine than ordinary preemption and is invoked to determine whether a state law claim should be moved to federal court or whether the claims in federal court should be remanded to state court. Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). This doctrine provides that, in limited situations, ordinary common law complaints can be converted into federal claims when the preemptive force of a federal statute is sweeping and extraordinary. Boyle v. MTV Networks, Inc., 766 F.Supp. 809, 814-15 (N.D.Cal.1991). The United States Supreme Court has stressed the limited scope of this doctrine, finding complete preemption in only two instances: under § 301 of the Labor Management Relations Act and under § 502(a) of the Employee Retirement Income Security Act of 1974. DeCastro, 935 F.Supp. at 549.
[70] Bennett, No. 96-D-232-N at 14; Sanderson, 958 F.Supp. at 956-58; DeCastro, 935 F.Supp. at 554-55.
[71] Congress could have, if it desired, completely preempted state law by stating that § 332(c)(3)(A) would preempt all state laws that related to the rates charged, instead of providing for preemption only where state law regulates "the entry of or the rates charged" by CMRS providers. Compare ERISA's broader preemption clause which states that the law "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a).
[72] Br. of Resp'ts at 6.
[73] Br. of Appellants at 5.
[74] Rogers v. Westel-Indianapolis Co., No. 49D03-9602-CP-0295 (Ind.Super.Ct. July 1, 1996) (superior court dismissed class action concluding it did not have jurisdiction because the remedy requested by plaintiffs would require a change of rates and should therefore be heard by the FCC or a federal court); Simons v. GTE Mobilnet, No. H-95-5169 (S.D. Tex. April 11, 1996) (court dismissed case as preempted by the FCA where plaintiffs challenged the reasonableness of early termination fees in cellular service contracts); Powers v. Airtouch Cellular, No. N71816 (San Diego County. Super. Ct. Cal. Oct. 6, 1997) (case dismissed because although plaintiffs alleged suit was based on defendant's alleged failure to disclose "teardown charges," the real focus was on the legality or reasonableness of those charges.)
[75] Rogers, at 1-2.
[76] Br. of Resp'ts at 19.
[77] Powers, at 1.
[78] In re Long Distance Telecomm's. Litig., 831 F.2d 627 (6th Cir.1987) (in plaintiff's fraud claims arising from defendant's alleged failure to disclose its practice of charging long distance customers for uncompleted calls, ring time and holding time, court held the state law claims were not preempted because they did not conflict with the FCA and were within the conventional experience of the courts); Bruss Co. v. Allnet Communication Servs., Inc., 606 F.Supp. 401 (N.D.Ill.1985) (court denied motion to dismiss claims for fraud and unfair trade practices involving alleged overcharges for phone services); American Inmate Phone Sys., Inc. v. U.S. Sprint Comm's. Co., 787 F.Supp. 852 (N.D.Ill.1992); Weinberg v. Sprint Corp., 165 F.R.D. 431 (D.N.J. 1996).
[79] 112 Ill.2d 428, 98 Ill.Dec. 24, 493 N.E.2d 1045, cert. denied, 479 U.S. 949, 107 S.Ct. 434, 93 L.Ed.2d 384 (1986).
[80] Kellerman, 98 Ill.Dec. 24, 493 N.E.2d at 1047-48.
[81] Id. 98 Ill.Dec. 24, 493 N.E.2d at 1051.
[82] 935 F.Supp. 541 (D.N.J.1996).
[83] Id. at 545.
[84] Id. at 550.
[85] Kellerman, 98 Ill.Dec. 24, 493 N.E.2d at 1051; DeCastro, at 554.
[86] In re Operator Servs. Providers of Am., 6 FCC Rec. 4475, 4477 (1991); see also In the Matter of Richman Bros. Records, Inc. v. U.S. Sprint Communications Co., 10 FCC Rec. 13639, 13641 (1995) (section 414 preserves claims against carriers as against other corporations, such as liability for misleading advertising).
[87] Arkansas Louisiana Gas Co. v. Hall, 453 U.S. 571, 578-79, 101 S.Ct. 2925, 2931, 69 L.Ed.2d 856 (1981) (damage actions are disguised retroactive rate adjustments and thus barred by filed rate doctrine); Chicago and N.W. Transp. Co. v. Kalo Brick & Tile Co., 450 U.S. 311, 323, 101 S.Ct. 1124, 1133, 67 L.Ed.2d 258 (1981) (state court action dismissed where Interstate Commerce Commission's authority under the Interstate Commerce Act to regulate abandonments is exclusive and plenary); Wegoland, Ltd. v. NYNEX Corp., 806 F.Supp. 1112, 1121 (S.D.N.Y.1992) (damages award would require a court to determine a reasonable rate); Weinberg v. Sprint Corp., No. BER-L-12073-95 (N.J.Sup.Ct.1996) (a court's calculation of prorated rate for calls consisting of less than one minute amounts to a statement that phone companies should charge subscribers by the second in direct conflict with FCC determinations that rounding up is legitimate).
[88] 86 Wash.App. 488, 495, 937 P.2d 1128 (1997).
[89] Id. at 496, 937 P.2d 1128.
[90] Id. at 496, 937 P.2d 1128.
[91] Id. at 495, 937 P.2d 1128.
[92] Id.
[93] 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976).
[94] Nader, 426 U.S. at 292-94, 96 S.Ct. 1978.
[95] Id. at 294-95, 96 S.Ct. 1978.
[96] Id. at 295-97, 96 S.Ct. 1978.
[97] Texas & Pac. R. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907). Nader, 426 U.S. at 298, 96 S.Ct. 1978.
[98] Nader, at 298-99, 96 S.Ct. 1978 (discussing Abilene).
[99] Id. at 299, 96 S.Ct. 1978.
[100] Id.
[101] Id.
[102] Id.
[103] Id. at 300, 96 S.Ct. 1978.
[104] Id.
[105] Id. at 305, 96 S.Ct. 1978.
[106] 47 C.F.R. § 20.15(a), (c).
[107] Nader, 426 U.S. at 299, 96 S.Ct. 1978. See also Bennett v. Alltel Mobile Comm's. of Ala., Inc., No. 96-D-232-N, slip op. at 6 (1996).
[108] The conclusion that Appellants' claims are not preempted by Section 332 is limited to that question and does not address the merits of the case.
[109] Order of Dismissal. Clerk's Papers at 279.
[110] Vogt v. Seattle-First Nat'l Bank, 117 Wash.2d 541, 554, 817 P.2d 1364 (1991); United States v. Western Pac. R.R. Co., 352 U.S. 59, 63-64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956).
[111] In re Real Estate Brokerage Antitrust Litig., 95 Wash.2d 297, 302-03, 622 P.2d 1185 (1980).
[112] Smith v. Spring Comm's. Co., No. 96-2067 (N.D.Calif. 1996); AT & T v. MR Capital Corp., 888 F.Supp. 221, 224 (D.Mass.1995); Porr v. NYNEX Corp., 230 A.D.2d 564, 660 N.Y.S.2d 440 (N.Y.App.Div.1997). See also Kaplan v. ITT-U.S. Transmission Sys., Inc., 589 F.Supp. 729 (E.D.N.Y.1984), which supports AT & T's position. The plaintiff in that case brought suit claiming nondisclosure of charges for unanswered telephone calls. The United States District Court dismissed the case on primary jurisdiction grounds, stating that although "the plaintiff in this case is not challenging the reasonableness of a rate or tariff directly, he is challenging the reasonableness of a particular practicedefendant's nondisclosure policy..." Kaplan, 589 F.Supp. at 732-33.
[113] National Comm's. Ass'n v. AT & T Co., 46 F.3d 220 (2d Cir.1995); Kellerman v. MCI Telecomm's. Corp., 134 Ill.App.3d 71, 89 Ill.Dec. 51, 479 N.E.2d 1057 (1985), aff'd, 112 Ill.2d 428, 98 Ill.Dec. 24, 493 N.E.2d 1045, cert. denied, 479 U.S. 949, 107 S.Ct. 434, 93 L.Ed.2d 384 (1986); Pace Membership Warehouse, Inc. v. U.S. Sprint Comm's. Co., No. 90-F-2121, 1991 U.S. Dist. LEXIS 19788 (D.Colo. Feb. 8, 1991); Source Assocs., Inc. v. MCI Telecomm's. Corp., 1989 WL 134580 (D.Kan. 1989); Redding v. MCI Telecomm's. Corp., No. C-86-5498-CAL, 1987 U.S. Dist. LEXIS 16073 (N.D.Cal. Sept. 29, 1987).
[114] Nader, 426 U.S. at 292-95, 304-05, 96 S.Ct. 1978.
[115] Id. at 305-06, 96 S.Ct. 1978.
[116] See Second Report and Order, 9 FCC Rec. at 1413, 1418, 1478 (although there is congressional intent to create regulatory symmetry among CMRS, sufficient competition in the cellular marketplace obviates any need for conventional regulation and thus CMRS providers are exempt from tariff filing requirements).
[117] Br. of Resp'ts at 40-41.
[118] 47 U.S.C. § 202(a).
[119] American Broad. Cos. v. F.C.C., 663 F.2d 133 (D.C.Cir.1980); Ad Hoc Telecomm's. Users Comm. v. F.C.C., 680 F.2d 790 (D.C.Cir.1982); MCI Telecomm's. Corp. v. F.C.C., 917 F.2d 30 (D.C.Cir.1990).
[120] MCI Telecomm's. Corp., 917 F.2d at 39; Competitive Telecomm's. Ass'n v. F.C.C., 998 F.2d 1058, 1061 302 U.S.App. D.C. 423 (D.C.Cir. 1993); American Message Ctrs. v. FCC, 50 F.3d 35, 40 (D.C.Cir. 1995).
[121] American Broad. Cos., 663 F.2d at 138; Ad Hoc Telecomm's. Users Comm., 680 F.2d at 795; MCI Telecomm's. Corp., 917 F.2d at 39.
[122] American Broad. Cos., 663 F.2d at 138 (quoting American Trucking Ass'n v. F.C.C., 377 F.2d 121, 127 (D.C.Cir. 1966), cert. denied, 386 U.S. 943, 87 S.Ct. 973, 17 L.Ed.2d 874 (1967)).
[123] Gelb v. AT & T Co., 813 F.Supp. 1022, 1029-31 (S.D.N.Y.1993); Marcus v. AT & T Corp., 938 F.Supp. 1158, 1171 (S.D.N.Y.1996), aff'd, 138 F.3d 46 (2d Cir.1998); see also Day v. AT & T Corp., 63 Cal.App.4th 325, 74 Cal.Rptr.2d 55 (1998) (injunctive relief is permissible but "filed rate" doctrine bars any monetary recovery).