**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
SEPTEMBER 2, 2021

*González, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
SEPTEMBER 2, 2021

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS, NINTH CIRCUIT IN | ) ) ) ) | |
| SPENCER ALPERT, | ) ) | No. 99377-7 |
| Plaintiff-Appellant, | ) ) | (certified C19-35867) |
| v. | ) ) | En Banc |
| NATIONSTAR MORTGAGE, LLC, a Delaware limited liability company; HARWOOD SERVICE COMPANY, a Delaware corporation, | ) ) ) ) ) | Filed: September 2, 2021 |
| Defendants-Appellees, | ) ) | |
| and | ) ) | |
| AMERICAN SECURITY INSURANCE COMPANY, a Delaware corporation; STANDARD GUARANTY INSURANCE COMPANY, a Delaware corporation; ASSURANT, INC., a Delaware corporation, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

*Alpert v. Nationstar Mortgage LLC, et al.*
No. 99377-7

OWENS, J. — This case arrives via certified questions from the Ninth Circuit Court of Appeals and involves a homeowner who failed to insure his property. When the homeowner failed to insure his property, the mortgage servicer purchased insurance to cover the property pursuant to the mortgage agreement. This type of policy is known as "force placed insurance" or "lender placed insurance." Order Certifying Questions to the Wash. Sup. Ct. at 2-3 (9th Cir. Dec. 31, 2020). The policy was underwritten by the insurers and passed through a broker to the mortgage servicer. The homeowner claims that these parties participated in an unlawful kickback scheme that artificially inflated the premiums.

In Washington, insurers must generally file their rates and receive approval from the Office of the Insurance Commissioner (OIC) before selling insurance. The rates can be neither too high nor too low. Once the rates are filed and approved by the governing agency, the rates are "per se reasonable" and claims that run squarely against these rates must be dismissed. This prohibition against suit is known as the "'"filed rate" doctrine.'" *McCarthy Fin., Inc. v. Premera*, 182 Wn.2d 936, 942, 347 P.3d 872 (2015) (quoting *Tenore v. AT&T Wireless Servs.*, 136 Wn.2d 322, 331-32, 962 P.2d 104 (1998)).

While the filed rate doctrine has historically applied to shield entities that file rates, we are asked whether the filed rate doctrine also applies to bar suit against intermediaries who do not file rates. In this case, the intermediaries are the mortgage

2

*Alpert v. Nationstar Mortgage LLC, et al.*
No. 99377-7

servicer (Nationstar Mortgage LLC, or Nationstar) and broker (Harwood Service

Company, or Harwood) who participated in the procurement of the policy from the

insurers. If the filed rate doctrine applies to these intermediaries, we are then asked to

determine whether damages would be barred under our state's only case applying the

doctrine, *McCarthy*.

The filed rate doctrine exists to ensure that agencies, such as the OIC, retain

primary jurisdiction in determining what rates are reasonable and to prevent rate filers

from unfairly discriminating among similarly situated customers. We recognize that

allowing suit against intermediaries in some cases undermines these principles in the

same way that suit against a rate-filer would.

Therefore, to ensure that the filed rate doctrine achieves its intended effect, we

hold today that the filed rate doctrine must also apply to bar suit against intermediaries

where awarding damages or other relief would squarely attack the filed rate. In light

of this holding, we return the second question pertaining to damages to the Ninth

Circuit Court of Appeals to first revisit and apply *McCarthy* to the specific allegations

of Alpert's outstanding claims.

## I. STATEMENT OF FACTS

This case involves a homeowner who claims that he was overcharged for "force

placed" home insurance (also known as lender placed insurance). "Force placed

insurance" is insurance that a lender or mortgage servicer procures on behalf of the

3

*Alpert v. Nationstar Mortgage LLC, et al.*
No. 99377-7

homeowner, pursuant to a mortgage agreement, if the homeowner fails to insure the property.

For three years the homeowner, Mr. Spencer Alpert, did not maintain homeowner's insurance as required by his mortgage agreement. As a result, his loan servicer, Nationstar, obtained insurance and charged Alpert.[1] The insurers were Assurant, American Security Insurance Company (ASIC) and Standard Guaranty Insurance Company (collectively Assurant Defendants). Harwood acted as an intermediary broker between the insurers and Nationstar. Harwood is a wholly owned subsidiary of Nationstar. Only the claims against Nationstar and Harwood are the subject of this appeal, and the claims against Assurant Defendants were dismissed by agreement of the parties.

The heart of Alpert's claims is that Assurant Defendants, Harwood, and Nationstar operated an unlawful kickback scheme that inflated Alpert's premiums. Alpert alleges that Nationstar and ASIC misnamed payments to Nationstar as "'commissions,' 'expense reimbursements,' or premiums for riskless reinsurance," and he asserts that these payments were actually "gratuitous payments constituting an effective rebate on the cost of coverage to Nationstar." Br. of Appellant at 14 (9th Cir. No. 19-35867 (2020)). Nonetheless, defendants claim that "Nationstar paid to

---

[1] Alpert asserts that Nationstar, and not Alpert, is the "insured" under this force placed insurance agreement. However, we need not resolve this question whether Alpert, Nationstar, or both were the "insured" to reach our decision today.

4

*Alpert v. Nationstar Mortgage LLC, et al.*
No. 99377-7

ASIC the *approved* rate which was then passed to Mr. Alpert without adding a single cent." Opposing Br. of Defs.-Appellees' Nationstar and Harwood at 11.

Alpert brought a total of 13 claims against defendants. Among these, Alpert asserted federal claims arising under the Truth in Lending Act of 1968, 15 U.S.C. ch. 41, and Racketeering Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. ch. 96, as well as state law claims based in contract, tort, and the Consumer Protection Act, ch. 19.86 RCW.

The federal district court dismissed counts 1-5 and 7-10 based on the filed rate doctrine and counts 6, 12, and 13 on other grounds. Alpert settled all claims against Assurant Defendants, and accordingly, counts 4 and 7 against these parties are no longer at issue. Because only count 11 remained, the federal district court dismissed the case due to lack of subject matter jurisdiction and remanded to the King County Superior Court. Alpert then appealed to the Ninth Circuit Court of Appeals.

Accordingly, of Alpert's numerous claims, counts 1, 2, 3, 5, 8, 9, and 10 are the only remaining counts that are the subject of his appeal.[2] Alpert broadly pleaded damages that included general damages, actual damages, treble damages, statutory damages, injunctive relief, and attorney fees.

---

[2] These claims are as follows: count 1 (breach of contract), count 2 (breach of implied covenant of good faith and fair dealing), count 3 (unjust enrichment), count 5 (violation of Washington Consumer Protection Act), count 8 (breach of fiduciary duty), count 9 (violation of RICO, 18 U.S.C. § 1962(c)), count 10 (violation of RICO, 18 U.S.C. § 1962(d)).

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Alpert v. Nationstar Mortgage LLC, et al.*
No. 99377-7

## II. CERTIFIED QUESTIONS PRESENTED

1. Should the filed rate doctrine apply to claims by a Washington homeowner against a loan servicer arising from the placement of lender placed insurance on the Washington homeowner's property where the servicer purchased the insurance from a separate insurance company who filed the insurance product with the Washington State Office of the Insurance Commissioner?

2. In the event the filed rate doctrine does apply to this type of transaction, do the damages requested by Plaintiff fall outside the scope of the filed rate doctrine or, rather, do they "directly attack agency-approved rates," such that they are barred under *McCarthy Finance, Inc. v. Premera*, 347 P.3d 872, 875 (2015)?

## III. ANALYSIS

A.     *Background of the Filed Rate Doctrine*

Historically, many state and federal laws have required certain utilities to submit their rates for approval before offering those rates to the public. *See, e.g., Keogh v. Chi. & Nw. Ry. Co.*, 260 U.S. 156, 43 S. Ct. 47, 67 L. Ed. 183 (1922); RCW 48.19.040 (1) (requiring insurers to file and maintain rates). In Washington, for example, once an insurer files a rate with the OIC and the rate is approved, the insurer can sell insurance only according to the parameters of that rate. RCW 48.19.040(6).

*Keogh*, a federal case, first established almost a century ago that once a filed rate is approved, filers are immune from attacks on the approved rates. "The rights as defined by the tariff cannot be varied or enlarged by either contract or tort of the carrier. And they are not affected by the tort of a third party." *Keogh*, 260 U.S. at 163 (citations omitted). This prohibition against suit is known as the "filed rate" or "filed tariff" doctrine. *Tenore*, 136 Wn.2d at 331-32.

6

*Alpert v. Nationstar Mortgage LLC, et al.*
No. 99377-7

"The purposes of the 'filed rate' doctrine are twofold: (1) to preserve the agency's primary jurisdiction to determine the reasonableness of rates, and (2) to insure that regulated entities charge only those rates approved by the agency." *Id.* (citing *Ark. La. Gas Co. v. Hall*, 453 U.S. 571, 577-78, 101 S. Ct. 2925, 69 L. Ed. 2d 856 (1981)).

Despite the frequent application of the filed rate doctrine in federal courts, this court has only once applied the filed rate to bar suit in *McCarthy*, 182 Wn.2d 936. In *McCarthy*, we held that claims asserting damages under the Consumer Protection Act were barred by the filed rate doctrine. *Id.* at 943-44. We reasoned that the filed rate doctrine would apply only if the claims and damages directly attacked agency rates and "would necessarily require courts to reevaluate agency-approved rates." *Id.* at 942-43. Damages were not barred, even if they were "related to agency-approved rates" so long as they were "merely incidental" to the claims or were claims for general damages. *Id.* at 942 (citing *Tenore*, 136 Wn.2d at 344). With this background in mind, we turn to address the two certified questions.

B.      *The Filed Rate Doctrine Applies to Intermediaries Where Awarding Damages Runs Squarely against the Filed Rate*

"Certified questions are matters of law we review de novo." *Frias v. Asset Foreclosure Servs., Inc.*, 181 Wn.2d 412, 420, 334 P.3d 529 (2014).

7

*Alpert v. Nationstar Mortgage LLC, et al.*
No. 99377-7

Alpert asserts that the filed rate doctrine is inapplicable to Nationstar and Harwood because they are "intermediaries"[3] who never filed a rate with the OIC. Alpert points to *Tenore* where we stated that the filed rate doctrine "provides, in essence, that any 'filed rate'—a rate filed with and approved by the governing regulatory agency—is per se reasonable and cannot be the subject of legal action against the *private entity* that filed it." 136 Wn.2d at 331-32 (emphasis added). Alpert emphasizes that neither Nationstar nor Harwood were the *private entity* that filed the rate and, therefore, do not fall within the doctrine's reach.

Federal courts recently presented with similar scenarios have generally concluded that the filed rate doctrine applies to transactions where the doctrine's underlying purposes, preserving agencies' primary jurisdiction and preventing unfair discrimination, are undermined. According to these courts, applicability of the doctrine does not depend strictly on the identities of the plaintiff and defendant as ratepayers and rate-filers. *See Rothstein v. Balboa Ins. Co.*, 794 F.3d 256, 263-65 (2d Cir. 2015); *Leo v. Nationstar Mortg. LLC*, 964 F.3d 213, 217 n.4 (3d Cir. 2020); *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321-23 (11th Cir. 2018).

We agree that labels do not necessarily govern the doctrine's applicability. Where a rate filer and other intermediaries jointly act to artificially inflate the rate,

---

[3] While Alpert asserts that the filed rate doctrine should not apply because the insurance code does not apply to intermediaries, the insurance code generally extends to "all persons having to do [with all insurance and insurance transactions]." RCW 48.01.020.

8

*Alpert v. Nationstar Mortgage LLC, et al.*
No. 99377-7

allowing suit against any of these parties may still have the same effect of directly attacking the rate and causing courts to "reevaluate agency-approved rates." *McCarthy*, at 942-43.[4] If the suit does in fact run squarely against the rate, suit must logically be barred, regardless of the party's status as a rate-filer, so that the doctrine may serve its intended purposes.[5]

Accordingly, we decline to recognize a categorical exemption from the filed rate doctrine for intermediaries who do not file rates. Rather, the doctrine's applicability to nonfiling intermediaries turns on whether awarding damages squarely attacks the filed rate. As the conduct at issue involves joint conduct between the rate-filer and intermediaries, we hold that the filed rate doctrine may also apply where the allegations run squarely against the filed rate. We therefore answer the first certified question in the affirmative.

---

[4] Alpert further asserts that barring suit against intermediaries would undermine the Department of Financial Institution's primary jurisdiction as well as other statutory schemes. However, the filed rate doctrine will bar suit only if damages run squarely against the rate, and it would generally not undermine agencies of their ability to enforce their regulations or provide redress where they have express statutory authority to do so.

[5] Alpert further relies on *Smith v. SBC Communications Inc.*, 178 N.J. 265, 839 A.2d 850 (2004); however, we find *Smith* unpersuasive. In *Smith*, the filed rate was applicable only to the first transaction under the regulatory scheme and inapplicable to subsequent resales. *Id.* at 277-78. Here, there was a singular sale for insurance as evidenced by the mortgage agreement that was made "*at Lender's option and Borrower's expense*." Opening Br. of Appellant at 12 (9th Cir. No. 19-35867 (2020)).

Alpert v. Nationstar Mortgage LLC, et al.
No. 99377-7

C.     *We Decline to Address the Second Certified Question and Ask the Court To First Revisit and Apply* McCarthy

The second question the Ninth Circuit asks is what damages are barred by the filed rate doctrine. Alpert brings a variety of claims, some which have been settled, dismissed, or are seemingly no longer at issue. This task requires analyzing the allegations to determine whether the relief requested comports with *McCarthy*.

As we do not wish to unnecessarily expand our reasoning in *McCarthy* to analyze claims that may fall squarely within its parameters, we respectfully ask the Ninth Circuit Court of Appeals to first revisit and apply *McCarthy* in light of today's opinion and so decline to answer the second certified question at this time. "Whether to actually answer a certified question that has been accepted for review is within the discretion of this court." *United States v. Hoffman*, 154 Wn.2d 730, 736, 116 P.3d 999 (2005) (citing *Hoffman v. Regence Blue Shield*, 140 Wn.2d 121, 128, 991 P.2d 77 (2000)).

## IV. CONCLUSION

In certain circumstances, awarding damages against intermediaries such as mortgage brokers and servicers may directly attack the filed rate. When it does, the doctrine must apply to bar suit, just as it would against the rate-filer. Accordingly, we answer the first question in the affirmative. We respectfully decline to answer the second question and ask the court to revisit and apply *McCarthy*.

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Alpert v. Nationstar Mortgage, LLC, et al.*
No. 99377-7

_____
Owens, J.

WE CONCUR:

_____
González, C.J.

_____
Johnson, J.

_____
Madsen, J.

_____
Stephens, J.

_____
Gordon McCloud, J.

_____
Yu, J.

_____
Montoya-Lewis, J.

_____
Whitener, J.

11